**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **NADINE DEPP, as Next Friend for N.H.** | § | |
| | § | |
| **v.** | § | **Case No. 4:22-cv-00436-ALM** |
| | § | |
| **NATALIE CASTILLEJA and** | § | |
| **DENTON COUNTY** | § | |

<u>**DEFENDANT DENTON COUNTY'S FIRST AMENDED MOTION TO DISMISS**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

 COMES NOW **DENTON  COUNTY,** one of the two Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(6), and files its FIRST AMENDED MOTION TO DISMISS,[1] and would show:

**I.**
**INTRODUCTION AND OVERVIEW**

 Plaintiff has sued former Denton County Juvenile Supervision Officer Natalie Castilleja, along with Denton County, because of illegal sexual relations between the minor Plaintiff "N.H." and former Officer Castilleja - which occurred during times when N.H. had been released from the Juvenile Detention Facility and was in the care and custody of her mother Plaintiff Nadine Depp. It is indeed unfortunate - and felonious - that Castilleja had sex with N.H. when in the free world. And Castilleja has now plead guilty to multiple felonies for her criminal conduct.  But the fact that Castilleja first encountered N.H. while she [N.H.] was detained in the Juvenile Detention Facility is too tenuous a connection to impose any legal liability on Denton County under these facts. Plaintiff's flimsy attempt to thrust any liability onto Denton County cannot meet threshold plausibility requirements, particularly given the applicable deliberate indifference standard as well as *Monell*'s "moving force" causation requirement.   Dismissal of Denton County should follow.

---

[1]This Motion responds to the PLAINTIFF'S SECOND AMENDED COMPLAINT [Dkt. 23] filed February 28, 2023.

## II.
## GROUNDS FOR RELIEF

Pursuant to Local Rule CV-7(a)(1), Denton County requests the Court decide these issues:

1.      Whether Plaintiff has plead plausible Section 1983 claims because former Officer Castilleja was not acting under "color of law" when she sexually assaulted N.H.;

2.      Whether Plaintiff has plead any plausible Section 1983 or *Monell* claims;

3.      Whether Plaintiff has plead any plausible Failure to Train/Supervise claims;

4.      Whether Plaintiff has plead any plausible "Retaliation" claim;

5.      Whether Plaintiff has plead any plausible State law claims; and

6.      Whether Plaintiff can recover punitive damages from Denton County.

## III.
## PERTINENT FACTUAL BACKGROUND

For purposes of dismissal under FED. R. CIV. P. 12(b)(6), the following are pertinent facts gleaned from Plaintiff's lawsuit[2] along with public records and public information.

Plaintiff correctly avers that Denton County is a political subdivision of the State of Texas.[3] As part of its governmental functions, Denton County operates the Denton County Juvenile Detention Center ("Juvenile Detention Center") located at 210 S. Woodrow Lane in Denton, Texas.[4] The Juvenile Detention Center is a short-term, secure facility, designed to protect the community and the child and to assure the child's appearance in court.[5]

---

[2]Because this motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), the factual allegations in Plaintiff's SECOND AMENDED COMPLAINT are taken as true but not necessarily the conclusory statements and bald assertions. However, nothing contained herein is intended to serve as a waiver of Defendant's right to challenge the veracity of same at trial or in the presentation of a further dispositive motions, if same even necessary.

[3]*See*, SECOND AMENDED COMPLAINT [Dkt. 23] paragraph I(4)

[4]*See*, SECOND AMENDED COMPLAINT [Dkt. 23] paragraph III(9);

[5]*See*, https://www.dentoncounty.gov/533/Admission-Facilities-Services

Natalie Castilleja was formerly employed by Denton County as a Juvenile Supervision Officer ("JSO")[6] and she worked in the Denton County Juvenile Detention Center until her termination on September 21, 2021.

Plaintiff "N.H." is a female minor.[7]  She currently resides with her <u>father</u> in Pensacola, Florida.  Nadine Depp is the mother of juvenile N.H.[8] and resides in Aubrey, Denton County, Texas.[9]

N.H. was intermittently detained in the Juvenile Detention Facility for engaging in a variety of delinquent/criminal conduct.[10]  More specifically, she was detained in the Juvenile Detention Facility on February 21, 2021, but soon released to her Mother under applicable rules of release.[11]  N.H. was re-arrested and detained again on April 17, 2021.[12]  She was released on August 16, 2021, to the care and custody of her Mother on what was supposed to twenty four (24) months of "Intensive Supervised Probation."[13]  However, barely three weeks later, on September 8, 2021, N.H. was re-arrested for violating her probation and she was returned to the Juvenile Detention Facility.[14]

During one of the sporadic periods when N.H. had been released from the Juvenile Detention Center [and was in the free world under the sole care, custody, and control of her Mother/Plaintiff Nadine Depp in Aubrey, Texas], Castilleja and N.H. began engaging in illicit sexual relations.

---

[6]*See*, SECOND AMENDED COMPLAINT [Dkt. 23] paragraph I(3)(however, mislabeling her as "Probation Officer")

[7]*See*, SECOND AMENDED COMPLAINT [Dkt. 23] paragraph I(1).  At the time of the alleged incidents, she was 14 years old.

[8]*See*, SECOND AMENDED COMPLAINT [Dkt. 23] paragraph I(2)

[9]*See*, SECOND AMENDED COMPLAINT [Dkt. 23] paragraphs I(1), (2)

[10]*See*, i.e., SECOND AMENDED COMPLAINT [Dkt. 23] paragraphs I(1);  III(8)-(9), (18), (23), (24), and (32)

[11]*See*, SECOND AMENDED COMPLAINT [Dkt. 23] paragraph III(8), (23)

[12]*See*, SECOND AMENDED COMPLAINT [Dkt. 23] paragraph III(9), (24)

[13]*See*, SECOND AMENDED COMPLAINT [Dkt. 23] paragraph III(16)

[14]*See*, SECOND AMENDED COMPLAINT [Dkt. 23] paragraph III(18)

Specifically, Plaintiffs allege as follows:

"On or about **August 16, 2021**, Defendant Natalie Castilleja began continuously sexually abusing Child N.H., **coming to Child N.H.'s house** at night and taking Child N.H., without parental permission and in violation of Child N.H.'s Probation Rules, and sexually abusing her."[15]

The TRUE BILL OF INDICTMENT charges the criminal conduct happened on August 28, 2021.[16]

Tellingly, there are no allegations that there were any sexual encounters - or any type inappropriate physical contact - between Castilleja and N.H. at the Juvenile Detention Center.[17] Plaintiff's judicial admissions confirm that the sexual abuse occurred outside of the Juvenile Detention Center and that the minor, N.H., was not in the custody of Denton County at the time of the criminal conduct by/with Castilleja.   Nor are there any contentions by Plaintiffs that sexual abuse of any kind has ever occurred at the Juvenile Detention Center involving any other juvenile(s).[18]

According to Plaintiff, Castilleja had groomed and developed the prohibited relationship with N.H., culminating in the August 2021, sexual encounters.  Plaintiff alleges that "on or about April 17, 2021, while on duty as a Juvenile Probation Officer, for Denton County, Defendant Natalie Castilleja began engaging in a pattern of routine and inappropriate behavior, with the minor child."[19] However, the only specific example of "inappropriate behavior" occurring at and/or in the Juvenile Detention Facility were "the passing of flirtatious notes."[20]   Plaintiff also relays that there was on June 28, 2021, an anonymous complaint about "an instance of suspected abuse or inappropriate

---

[15]*See*, SECOND AMENDED COMPLAINT [Dkt. 23] paragraph III(17), (31)(emphasis added).

[16]https://justice1.dentoncounty.gov/PublicAccessDC/CaseDetail.aspx?CaseID=2857226

[17]*See, generally,* SECOND AMENDED COMPLAINT [Dkt. 23]; but see, paragraph III(18)(nebulously suggesting that "Castilleja continued the improper and illicit relationship with Child N.H. while on duty and carry out her official duties" after N.H. was re-arrested and returned to the Juvenile Detention Center on September 8, 2021).

[18]*See, generally,* SECOND AMENDED COMPLAINT [Dkt. 23]

[19]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraph III(11), (26)

[20]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraph III(12), (27)

conduct by Defendant Natalie Castilleja with or against the [sic] between the minor child."[21]  This was investigated[22] and Plaintiff readily admits that "there was found to be no improper behavior, despite, on information and belief, sufficient contravening information and evidence being present or existing at the time of the investigation."[23]

On September 8, 2021, N.H. was re-arrested and returned to the Juvenile Detention Facility.[24] Ten days later, on September 18, 2021, for the very first time N.H. made an outcry about improper contact by and with Castilleja.[25]  A second investigation was immediately commenced.[26]  It was not until this second investigation that Castilleja's criminal conduct became known to Denton County.[27] Castilleja was immediately suspended, then terminated[28] and, on October 8, 2021, arrested for a variety of felonies.[29]  Plaintiff avers that since Castilleja's arrest there has been a "noticeable distinction and change in treatment to the minor child was noticed."[30]

---

[21]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraph III(14), (28)

[22]Plaintiffs mistakenly aver this investigation was "conducted by Denton County Detention center staff", *See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraph III(14), (28).  In actuality, a comprehensive investigation was conducted by the Texas Juvenile Justice Department with interviews of numerous witness - including the interviewing juvenile N.H. twice [who repeatedly "denied any inappropriate interactions with Castilleja"], resulting in confirmation from the Office of Inspector General, Texas Juvenile Justice Department, that it  was unable to determine whether there was any evidence to suggest "Sexual Abuse - Non-Contact at DENTON COUNTY JUVENILE DETENTION CENTER involving alleged victim [N.H.] and alleged perpetrator Natalie Castilleja"

[23]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraph III(14)-(15), (28)-(29)

[24]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraph III(19), (32)

[25]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraph III(20), (33)

[26]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraph III(20), (34)

[27]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraph III(20), (34)

[28]Two of the other Detention Facility Staff who learned a few days earlier of the improper off-site sexual relations were terminated for their failure to timely report sexual abuse of a minor.

[29]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraph III(21), (35); see also TRUE BILL OF INDICTMENT, *State of Texas vs. Natalie Guadalupe Castilleja*, Case No. F22-347-462, in the 462nd District Court of Denton County,  https://justice1.dentoncounty.gov/PublicAccessDC/CaseDetail.aspx?CaseID=2857226

[30]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraph III(21), (22), (36), and (37)

# IV.
# STANDARD OF REVIEW

To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard "asks for more than a sheer possibility that the defendant has acted unlawfully." *Id.* at 679. The Supreme Court's decision in *Twombly* "retire[d]" the standard espoused in *Conley v. Gibson* which spoke of the "accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," in favor of its current standard requiring plausibility. *Id.* at 1968-70 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Under FED. R. CIV. P. 8, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn" under a relevant legal theory. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (*quoting* 3 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d §1216 at 156-159).When reviewing a complaint to determine whether it contains all of the essential elements of a plaintiff's theory of recovery, "[t]he court is not required to 'conjure up unplead allegations or construe elaborately arcane scripts' to save [the] complaint." *Id.* (*quoting Gooley v. Mobile Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988)). If the complaint "lacks an allegation regarding a required element necessary to obtain relief," dismissal is proper. *Id.* (*quoting* 2A MOORE'S FEDERAL PRACTICE ¶12.07 [2.-5] at 12-91).

The pleading standard under Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 679. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. When considering a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), courts must accept all well pleaded facts in the complaint as true; however, legal conclusions "are not entitled to the [same] assumption of truth" nor are courts bound to "accept as true a legal conclusion couched as a factual allegation." *Id.* If, after removing legal conclusions, a complaint merely "tenders naked assertions devoid of further factual enhancement," dismissal under Rule 12(b)(6) is proper. *Id.* at 678.

## V.
## PLAINTIFFS' CLAIMS AGAINST DENTON COUNTY FAIL AS  MATTER OF LAW

Plaintiff avers that "this is an action for damages pursuant to 42 U.S.C. §1983 based on the continuing violations of, inter alia, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution."[31]  The resulting claims are a series of eight garbled "Counts" indiscriminately intermixing buzzwords from differing legal theories under both Federal and State law without any meaningfully analysis nor substantive discussion of relevant facts [if even any].[32]  Put bluntly, Plaintiff's bare assertions untethered to any factual underpinnings are merely untenable legal conclusions, and thus, insufficient to push their claims past the pleadings stage.

Even if properly plead, there are myriad reasons why the Plaintiff cannot prevail.  First, former Officer Castilleja was not acting under color of state law, and thus, there is no §1983 liability on the part of the County.  Yet even if somehow construed that there was some type  "state action",

---

[31] *See*, SECOND AMENDED COMPLAINT [Dkt. 23] paragraph II(5), p. 2

[32] *See*, generally, SECOND AMENDED COMPLAINT [Dkt. 23] paragraphs IV-XI, p. 8-18

the County has not engaged in any conduct for which it could be liable under Federal or State law. Plaintiff's pleadings are woefully deficient, for a variety of reasons, regarding a viable *Monell* claim, particularly averring a failure to train or failure to supervise. The presumed yet defectively alleged "retaliation" claims is invalid. Similarly, Plaintiff cannot prevail against Denton County under any State law theory. Finally, Plaintiff cannot recover punitive damages against Denton County.

### A.       Castilleja was not acting under color of State law when sexually assaulting N.H.

Generally, to state a viable Section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the constitution (2) that was committed by a person acting under color of state law. *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). It is this second prong where Plaintiffs clearly fail - Castilleja was not acting under color of state law [nor certainly in her capacity as a Denton County Juvenile Supervision Officer] when she sexually assaulted N.H. in August of 2021.[33]

The issue of whether a perpetrator of sexual assaults on a minor is acting "under color of state law" is often discussed in the context of school employees and students. Courts frequently find, for example, that a school employee has acted under color of state law when the sexual abuse and wrongful conduct "occurred on school property" and the defendant used their position as a school employee to molest the child. See, *Adams v. Landry*, 2022 U.S. Dist. LEXIS 80631, at 13-14 (E.D. LA May 4, 2022)(listing cases)(*cf.*, finding that the Plaintiff had not alleged sufficient facts that School Principal - who had sexual relations with student at the Principal's home - was acting under color of state law).

---

[33]Denton County is certainly not suggesting that because the sexual contact was [presumably] consensual [as opposed to a forced/violent event] it is any less egregious. It is not. Sexual contact with a minor is a felony and consent from a minor can never be obtained. Period. And it is for this reason that Castilleja now stands charged with five felonies. Denton County draws this distinction to the Court's attention to underscore that the crux of Plaintiffs' claim is founded on events which transpired outside of and completely unrelated to Denton County's role in detaining N.H. in the Juvenile Detention Facility, thereby pushing it outside the ambit of "color of law."

Plaintiff's judicial admissions confirm that the sexual acts did not occur at the Denton County Juvenile Detention Facility, but rather, occurred while N.H. was living with and in the care, custody and control of her Mother.[34]  These sexual contacts between Castilleja and N.H. were in no way part of Castilleja's duties as a Juvenile Supervision Officer, were certainly not Juvenile Detention Department sponsored, nor reported to any Denton County Juvenile Department official.  These facts fall squarely into the circumstances where the accosting employing is <u>not</u> acting under color of state law.  See, i.e., *Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir. 1997)(finding school employee did *not* act under the color of state law because he first molested the student five months after the student withdrew from the school where the defendant taught, there was no evidence of physical sexual abuse occurring at the school, the school employee was not the student's teacher "before, during, and after the sexual abuse," and the school employee's contacts with the student "were in no way part of his duties as a state employee, were not school-sponsored, and were not reported to any school official"); *see also, Adams, id.*

In *Adams* the Court noted that "For example, without more information, it is unclear whether any physical sexual abuse occurred on school property or a school-sponsored event", *Adams*, 2022 U.S. Dist. LEXIS 80631, at *14. But here it is very clear that the only physical sexual activities occurred after N.H. had been released from the Juvenile Detention Facility and as a result of liaisons with Castilleja in her private capacity.[35] Without plausible allegations that Castilleja abused N.H. while acting in her [Castilleja's] official capacity as a Denton County Juvenile Supervision Officer, Castilleja's actions, albeit reprehensible and indisputably criminal, cannot form the predicate constitutional violation needed to impute liability onto Denton County under Section 1983.

---

[34]*See*, Second Amended Complaint [Dkt. 23] paragraph III(17), (31)

[35]*See*, Second Amended Complaint [Dkt. 23] paragraph III(17), (31)

**B.      Plaintiff has not properly plead nor could they establish Section 1983 and**
*Monell* **liability nor do they meet the governing deliberate indifference standard**

The Fifth Circuit, in *Hall v. Robinson*, 2015 U.S. App. LEXIS 11389 (5th Cir. 2015),
discussed Section 1983 and *Monell* liability involving claims against Harris County arising from the
rape of a 15 year old detainee by a Harris County Juvenile Supervision Officer in the Harris County
Juvenile Detention Facility.  *Hall* is instructive as to analysis of Plaintiff's claims presented herein.
In *Hall*, the Fifth Circuit discussed the "high standard of proof" which is required before imposing
municipal liability. *Hall,* 2015 U.S. App. LEXIS 11389, at *9-10.  It reiterated the well established
elements required to satisfy *Monell*, writing:

> The Fifth Circuit, in order to satisfy *Monell*, requires proof of "(1) an official policy
> (or custom), of which (2) a policy maker can be charged with actual or constructive
> knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or
> custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)(quoting
> *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

> *Hall*, *id* at *10.

If a Plaintiff establishes a constitutional violation, to hold a municipality liable, the Plaintiff
then has the burden to show that the violation resulted from a county policy or custom "adopted or
maintained with objective deliberate indifference to [her] constitutional rights." *Estate of Pollard*,
579 F. App'x 260, 267 (5th Cir. 2014)(citing *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997)(en
banc)). "A county acts with objective deliberate indifference if it promulgates (or fails to promulgate)
a policy or custom despite 'the "known or obvious consequences" that constitutional violations would
result.'" *Anderson v. Dallas County*, 286 F. App'x 850, 861 (5th Cir. 2008)(quoting *Piotrowski v. City
of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

**1.      Official Policy**

A "policy" for *Monell* purposes, can be a "policy statement, ordinance, regulation, or decision

that is officially adopted and promulgated by [a municipality's] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 436 (5th Cir. 2008).  For purposes of *Monell* liability, an "'[o]fficial policy' includes unwritten practices that are 'so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Jackson v. City of Hearne*, 959 F.3d 194, 204 (5th Cir. 2020).

Plaintiff does not point to any policy of Denton County and/or Denton County Juvenile Board.  In fact, the word "policy" appears nowhere in their entire lawsuit.  Considering that a constitutionally deficient policy is the cornerstone of a plausible *Monell* claim, the wholesale failure to even use the word "policy" speaks volumes about the flawed nature of the Plaintiff's pleadings.

### 2.    Persistent widespread practice rising to level of Official Custom

A "custom" for *Monell* purposes, is a "persistent, widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to . . . fairly represent[] government policy." *Gates*, 537 F.3d at 436. Critically, "[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Id.* at 437 (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)); *see also O'Quinn v. Manuel*, 773 F.2d 605, 610 (5th Cir. 1985); *City of Oklahoma v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427, 2436 (1985)(plurality opinion)(noting that, when a plaintiff cannot point to a policy that is unconstitutional on its face, "considerably more proof than [a] single incident" is necessary to establish municipal §1983 liability").  "A successful showing of such a pattern 'requires similarity and specificity; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific

violation in question." *Id.* (quoting *Peterson v. City of Fort Worth*, 558 F.3d 838, 850 (5th Cir. 2009)).  Importantly, a pattern requires "sufficiently numerous prior incidents, as opposed to isolated instances." *Peterson*, 558 F.3d at 852.  Therefore, to properly plead *Monell* liability, Plaintiffs must establish Denton County [or more specifically as discussed below, the Denton County Juvenile Probation Board] maintained an unconstitutional custom by alleging more than an isolated violation of N.H.'s own constitutional rights. *See id.*  Like their failure to note any official policy, there are no allegations about any purportedly problematic customs of Denton County and/or Juvenile Board.

Regarding specificity of allegations required, this Court has held that generic assertions of liability will not suffice. *See Wright v. Denison lndep. Sch. Dist.*, 2017 WL 2262778, at *4 (E.D. Tex. 2017).  A plaintiff suing a government entity and claiming some policy of the entity harmed them "should be able to muster allegations of 'past incidents of misconduct to others, multiple harms that occurred to the plaintiffs themselves, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy ....'" *Id.* at *4 (*citing Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011) ); *Williams v. City of Denton, Texas*, No. 4:17-CV-00811, 2019 WL 438403, at *7-8 (E.D. Tex. Jan. 10, 2019), report and recommendation adopted, No. 4:17-CV-00811, 2019 WL 430913 (E.D. Tex. Feb. 4, 2019).

### 3.      Plaintiff fails to identify official policy maker

Plaintiff does not identify any official policy maker in their SECOND AMENDED COMPLAINT.[36] There is no mention at all of the Denton County Juvenile Board and their nebulous allegations are lodged solely against Denton County.  In doing so, Plaintiff conflates Denton County with the

---

[36]*See, generally*, SECOND AMENDED COMPLAINT [Dkt. 23]

Denton County Juvenile Board.  This is an important distinction when it comes to implementation of official policy for which *Monell* liability arises.

The Fifth Circuit, other Federal District Courts, and the underlying Texas statutory scheme confirm that the official "policy maker" for purposes of the operation of a juvenile detention facility is the Juvenile Board of that County; not the County itself. See *Flores v. Cameron Cnty.*, 92 F.3d 258, 270 (5th Cir. 1996)("On remand, the district court should instruct the jury that the Juvenile Board is the official policy maker for Cameron County with respect to the establishment of personnel training policies at the detention center."); *Hall v. Robinson*, 2014 WL 5100302, 2014 U.S. Dist. LEXIS 145900, at *10-11 (S.D. Tex, Houston Div., Oct. 10, 2014), affirmed by *Hall v. Robinson*, 2015 U.S. App. LEXIS 11389 (5th Cir. 2015)("The uncontroverted summary judgment evidence is that Harris County's policymaker for the Harris County Juvenile Probation Department ("Juvenile Probation Department") is the Harris County Juvenile Board ("Juvenile Board")" and that the "Juvenile Probation Department maintains the Detention Center is downtown Houston, where both male and female juvenile detainees are in various stages of adjudication by the Juvenile Courts of Harris County.");  TEXAS HUMAN RESOURCES CODE Section 152.0671 (creating Denton County Juvenile Board);[37] TEXAS HUMAN RESOURCES CODE Section 221.002 (authorizing Juvenile Boards

---

[37]Such statute provides as follows:  Sec. 152.0671.  DENTON COUNTY.

(a)     The Denton County Juvenile Board is composed of the county judge, the district judges in Denton County, and the judge of any statutory court in the county.

(b)     The juvenile board shall elect one of its members as chairman at the beginning of each year.

(c)     The commissioners court shall pay the juvenile board members an annual salary set by the commissioners court at not less than $1,500, payable in equal monthly installments from the general fund of the county.

(d)      If approved by the juvenile board, the commissioners court shall reimburse each juvenile court judge for the judge's actual and necessary expenses incurred in attending seminars and other educational or instructional meetings related to juvenile matters.

(e)     Section 152.0005(b) does not apply to the juvenile board of Denton County.

to "adopt reasonable rules" regarding minimum standards for detention facilities); and TEXAS HUMAN RESOURCES CODE Section 142.002 (authorizing Juvenile Board to employ personnel necessary to provide juvenile probation services).

There are no allegations of any kind against the Denton County Juvenile Probation Board; such entity is never once mentioned in Plaintiff's lawsuit.[38] This failure is sufficient to dismiss Plaintiff's claims against the County.  But this is not the only pleading defect, as discussed below.

### 4.    Plaintiff fails to sufficiently plead an official policy, practice or custom of Denton County Juvenile Board

Even if Plaintiff had correctly identified the official policy maker, her claims still fail. Plaintiff's apparent hope is that the now known sexual abuse of N.H. by former Officer Castilleja, in and of itself, is somehow sufficient to foist *Monell* liability onto Denton County.  But it is not. Plaintiff must do far more than just suggest that discovery of "flirtatious notes" should have alerted the Juvenile Board to Castilleja's later felonies - - it must stem from a deliberate systemic Juvenile Board practice which is constitutionally unsound.   Plaintiff clearly fails here. Their SECOND AMENDED COMPLAINT fails to allege anything more than an isolated violation of N.H. constitutional rights [assuming, *arguendo*, that Castilleja was acting under color of state law] insufficient to establish a custom or policy of the Denton County Juvenile Probation Board, let alone one of Denton County. *See, e.g., Gates*, 537 F.3d at 437; *O'Quinn*, 773 F.2d at 610; *see also Tuttle*, 471 U.S. 808. Accordingly, because Plaintiff has failed to allege that Denton County [or again, more precisely the Denton County Juvenile Board] maintained an unconstitutional policy, custom, or practice as necessary to establish *Monell* liability, she has failed to properly state a claim capable of surviving Rule 12(b)(6) dismissal.

---

[38] *See*, *generally*, SECOND AMENDED COMPLAINT [Dkt. 23] paragraph

> **5.    Denton County Juvenile Board Policies were not the "moving force" of Plaintiff's alleged constitutional deprivation**

While the County certainly does not concede that Plaintiff has adequately plead the first two *Monell* prongs, it is the third prong where Plaintiff's claims are most obviously implausible.

The concept of "moving force" is completely absent from the Plaintiff's lawsuit.[39]  So, too, is any cogent discussion by Plaintiff of how any Denton County Juvenile Board policies were in any way related to the sexual encounters with Castilleja.  Plaintiff's suggestion [though really not even made at all] that the County's/Board's policies were the moving force behind the alleged constitutional harm falls far short of the "high threshold" of causation, *Piotrowski*, 237 F.3d at 580, required to avoid "municipal liability collaps[ing] into respondeat superior liability" *Snyder*, 142 F.3d at 796 (quoting *Brown*, 520 U.S., at 415).  In other words, Plaintiff's pleadings simply do not allow an inference that any purportedly problematic policy the moving force behind the subsequent criminal conduct of Castilleja in the free world.  Accordingly, Plaintiff has not plausibly alleged that a County policy, rather than criminal conduct of a private individual [Castilleja], was the "actual cause of the constitutional violation" *Valle*, 613 F.3d at 546 (citing *Thompson*, 578 F.3d at 300).

The fallacy of Plaintiff's claims fall flat, to the point of deliberate indifference/causation being non-existent as a matter of law.  Even given its best spin, Plaintiff's allegations merely show that predator Castilleja, unbeknownst to the County, was possibly "grooming" N.H. for later abuse once N.H. had been released.  But even allegations of "grooming" for later illegal sexual encounters does not demonstrate County liability nor requisite deliberate indifference standard.  See, i.e., *Hall v. Robinson*, 2014 WL 5100302, 2014 U.S. Dist. LEXIS 145900, at *10-11 (S.D. Tex, Houston Div., Oct. 10, 2014), affirmed by *Hall v. Robinson*, 2015 U.S. App. LEXIS 11389 (5th Cir. 2015)("the Halls [plaintiffs] construe the failure of the JSOs to report alleged and perceived misconduct between

---

[39]*See, generally*, SECOND AMENDED COMPLAINT [Dkt. 23]

JSO Robinson and M.S.H. as a series of events that allowed Robinson to 'groom' and eventually rape M.S.H. The Halls ultimately contend that these failures amount to Harris County's deliberate indifference of M.S.H.'s constitutional rights.  The record suggests otherwise.").

### 6.      Denton County cannot be held vicariously liable herein as matter of law

A governmental entity cannot be held vicariously liable under 42 U.S.C.§1983 for purported unconstitutional acts committed by its employees. *Pembaur vs. City of Cincinnati*, 106 S.Ct. 1292, 1298 (1986); *Monell vs. Dep't of Social Servs.,* 98 S.Ct. 2018, 2037 (1978); *Brown vs. Bryan County*, 53 F.3d 1410 (5th Cir. 1985); *Piotrowski*, 51 F.3d 512; *Harris vs. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987). Thus, to the extent Plaintiffs still seeks to foist liability onto the Denton County for the criminal private acts of Castilleja, they cannot do so.

### C.      Plaintiff has not properly plead nor can she establish a viable failure to protect/bodily integrity theory of liability

To proceed with her presumed Section 1983 failure-to-protect/bodily integrity claims,[40] Plaintiff must allege facts showing that (1) N.H. was "incarcerated under conditions posing a substantial risk of serious harm" and (2) "the prison official acted with 'deliberate indifference' to the inmate[s'] health or safety." *Hinojosa v. Johnson*, 277 Fed. Appx. 370, 374 (5th Cir. 2008). "Deliberate indifference" is shown when an official "knows of and disregards an excessive risk to inmate health or safety; . . . The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "In other words, in order to be deliberately indifferent, a prison official must be subjectively aware of

---

[40]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraph VI(51)-(57)(alleging in paragraph 52 that "Child N.H. had a fundamental substantive due process right to personal security and bodily integrity extending specifically to the right to be free from sexual abuse.")

the risk." *Adames v. Perez*, 331 F.3d 508, 513 (5th Cir. 2003); *see also Leyba v. Bell*, 2017 U.S. Dist. LEXIS 110537, at *22 (E.D. Tex. Apr. 17, 2017)("Defendants cannot be held liable for a risk of harm that was not known to them . . . .").

In *Hardeman v. Kerr County,* 244 Fed. Appx. 595 (5th Cir. 2007)(per curiam), the Fifth Circuit addressed whether Kerr County was liable for the rape of an inmate in the Kerr County jail, based on failure to adequately screen the jailer who raped her. The jailer's application reflected that he had previously worked as a police officer for a school district and as a juvenile detention officer in Bexar County. The jailer did not answer the application's question as to whether he had ever been fired, and did not sign the application certifying the statements as true and correct. The record showed that there was a background check, but it was not exhaustive, and it did not include checking with the school district at all. In fact, the jailer had been fired by the district for "improper advances toward high school (female) students." *Hardeman*, 244 Fed. Appx. at 596. In its opinion, the court did not mention the number of female students, and there was no mention of whether there was a criminal history check or a check with the Texas Commission on Law Enforcement. During the course of his employment, the jailer was reprimanded several times, typically for his conduct with female inmates. On one occasion he was counseled for putting his hands on inmates and for being too friendly with female inmates. On another occasion, he admitted calling a former inmate to establish a sexual relationship. He was also counseled for taking a female inmate out of the recreation yard and returning her to her cell without a female jailer present. A few months later, a female inmate reported that the officer had raped her. Initially, the jailer denied it, but later he admitted to "consensual" sex. *Id.*

In light of these facts and others, the Court of Appeals addressed whether Kerr County was deliberately indifferent in hiring the jailer. After noting the well-established law concerning liability

for hiring decisions under 42. U.S.C. §1983, the court found that Kerr County had not been deliberately indifferent in hiring the Jailer [who was named Marrero], saying:

> It is obvious that Kerr County should have done a better job screening Marrero. His omission of answers to key questions, such as whether he had previously been fired, alone should have been cause for alarm. Furthermore had the County contacted Harlandale ISD it likely would have learned that the district fired Marrero for making improper advances towards female students. Such information may have prompted the County to rethink hiring him for a position that would place him in close proximity to female inmates on a regular basis. Even if the County was negligent in hiring him, however, that still is not sufficient to hold the County liable for the constitutional violation. *(Citation omitted).*
>
> There are no grounds to find that the alleged rape in question was a "plainly obvious consequence" of hiring him. *Id.* Even if the County had done a thorough job of investigating Marrero, there was absolutely no history of violence, sexual or otherwise, to be found. **While the grounds for his discharge from Harlandale ISD were troubling, especially in retrospect, it requires an enormous leap to connect "improper advances" towards female students to the sexual assault at issue here.**
>
> *Id.* (emphasis added).

As in *Hardeman*, in the present case, there is no allegation that Castilleja had a history of sexual assaults, or for that matter - any criminal history at all.  Plaintiff's failure-to-protect claims are predominantly predicated on the slim allegation that "flirtatious notes" purportedly  passed to N.H. should have alerted someone that Castilleja would later sexually assault N.H. after her release. It requires an enormous [and legally impermissible] leap to connect Castilleja's "flirtatious notes" in April of 2021 [particularly in light of the investigation finding no improper conduct] to the later sexual encounters while N.H. was at home in her Mother's care and custody.  The gap between the consequence of learning that Castilleja may be writing "flirtatious notes" and later free-world sexual assaults of N.H. is far too great to support even an inference of deliberate indifference.  Here, the particular injury suffered is sexual assault of a minor[41] a felony which could not have been predicted.

---

[41]See, i.e., INDICTMENT

Though it may not be unreasonable, in the clarity of 20/20 hindsight and knowing the full extent of interactions between Castilleja and N.H., to now recognize that Castilleja <u>may</u> have been "grooming" N.H., that is not the applicable legal standard.  See, *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 412, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)("A finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.").

Knowledge of "flirtatious notes", standing alone, is insufficient to establish the County's deliberate indifference, so the Plaintiff layers on vague allegations to attempt to move the needle. For example, they sweepingly aver that "These [nonspecific] interactions cultivated and fostered an emotional connection with the minor child, and develop into a criminal relationship."[42] Plaintiff has not plausibly alleged - nor should the Court "infer"[43] - that these "flirtatious notes" in any way hinted that a felony sexual assault by Castilleja was forthcoming.  Plaintiff was required to plead something more to create a plausible inference that Denton County had knowledge of Castilleja's propensity for sexual abuse and that Denton County was somehow deliberately indifferent to the risk that Castilleja would later sexually assault the released juvenile. Plaintiff's approach requires a gaping lapse in logic. Namely, it requires one to assume that Juvenile Supervision Officers who violate policy by passing notes to a juvenile detainee will naturally transition into illegal sexual predation later and in the free world.   Plaintiff's ploy does not pass muster and will not support a plausible claim against Denton County.

---

[42]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraphs III(13), (27)

[43]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraphs IV(41)(arguing "Defendants awareness or strong suspicion can be inferred from the investigation they conducted.").

**D.      Plaintiff has not properly plead nor could they establish any claims for Failure to Train or Failure to Supervise**

Plaintiff's bare bones allegations of a failure to train and/or failure to supervise claim against the County are insufficient.[44]

For an inadequate training claim, plaintiffs must establish (1) an inadequate training policy; (2) deliberate indifference in adopting the training policy; and (3) that the inadequate training policy directly caused plaintiff's injury. *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992). Deliberate indifference in adopting the training policy is found when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

For failure to supervise, a plaintiff must show that "(1) the supervisor . . . failed to supervise the subordinate official; (2) a causal link exists between the failure to supervise and the violation of the plaintiff's rights; and (3) the failure to supervise amounts to deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998). "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001)(citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998) and *Thompkins v. Belt*, 828 F.2d 298, 304-05 (5th Cir. 1987)). Generally, the plaintiff must demonstrate at least a pattern of similar violations. *Id.* (citing *Snyder*, 142 F.3d at 798). The inadequacy of training must be obvious and obviously likely to result in constitutional violation. *Id.* (citing *City of Canton*, 489 U.S. at 390 and *Snyder*, 142 F.3d at 799). The standard to impose municipal liability for a single incident is "extremely narrow" and requires proof "that the highly

---

[44]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraphs VII(58)-(63)

predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Valle v. City of Houston,* 613 F.3d 536, 542 (5th Cir. 2010).

Plaintiff does not point to any specific deficiencies in Denton County's training or supervision policies nor any insufficiency in Castilleja's training. Her allegations are glaringly terse, conclusory, and implausible.

### E.      Plaintiff has not properly plead nor could they establish claim for Retaliation

To state a valid claim for retaliation, a plaintiff must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Bibbs v. Early,* 541 F.3d 267, 270 (5th Cir. 2008). Mere conclusory allegations of retaliation are insufficient to withstand a motion for dismissal of the claim. *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995).  Plaintiff alleges none of these requisite elements in Count 6, the claim which appears to be suggesting a nondescript retaliation theory.[45]

### F.      Plaintiff has not properly plead nor could they establish any State law claims

To the extent Plaintiff's Count 5 and Count 7,[46]  could be read to assert State tort claims against Denton County [as opposed to Defendant Castilleja], such State law claims fail.

The doctrine of sovereign immunity protects State governmental entities from liability for the negligence of its officers or agents, unless there is a constitutional or statutory provision waiving immunity. *Hall v. Robinson*, 618 F. App'x 759, 761 (5th Cir. 2015)(citing *Lowe v. Tex. Tech Univ.*,

---

[45]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraphs IX(69)-(72)

[46]*See,* SECOND AMENDED COMPLAINT [Dkt. 23], Count 5 paragraphs VIII(64)-(68)(referencing a "duty to exercise ordinary care" and "breach of their duty"); Count 7, paragraphs X(73)-(75)(entitled "Battery")

540 S.W.2d 297, 298 (Tex. 1976)). The Texas Tort Claims Act provides a waiver of sovereign immunity in certain circumstances. TEX. CIV. PRAC. & REM. CODE § 101.025; *Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175, 177 (Tex. 1994). To state a claim under the Act, plaintiffs must allege an injury resulting from the use of publicly-owned automobiles or a "condition or use of tangible personal or real property." TEX. CIV. PRAC. & REM. CODE § 101.021; *Texas Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 580 (Tex. 2001). Plaintiffs have not alleged any facts that would overcome Denton County's entitlement to sovereign immunity, particularly given the absence of any factual allegations as to putative State law claims.

Equally important is that Section 101.057(2) of the Tort Claims Act prohibits claims against a governmental entity arising from "assault, battery, false imprisonment, or any other intentional tort." TEX. CIV. PRAC. & REM. CODE §101.057(2). And there is no waiver of immunity for claims against a governmental unit arising out of the same conduct that forms a basis for an intentional tort claim against its employee. *Goodman v. Harris Cty.*, 571 F.3d 388, 394 (5th Cir. 2009)(citing *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)). This exception likewise bars any State law claims Denton County.

### G.      Plaintiff cannot recover Punitive Damages from Denton County

The Plaintiff repeats her mantra that she seeks recovery of punitive damages.[47] She cannot. It is well established that punitive damages are not recoverable against the County under federal or state law.  See, *City of Newport v. Fact Concerts*, *Inc*., 101 S.Ct. 2748 (1981)(no recovery of punitive damages under federal law) and TEX. CIV. PRAC. & REM. CODE § 101.024 (no recovery of punitive damages under state law).

---

[47] *See,* SECOND AMENDED COMPLAINT [Dkt. 23], paragraphs IV(45), V(50), VI(57), VII(63), VIII(68), IX(72), XI(82)("against the individual"), and XIII(b)

# VI.
# PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Defendant  **DENTON COUNTY, TEXAS,** prays that the Court grant its FIRST AMENDED MOTION TO DISMISS; that it dismiss Plaintiff's claims and pleas for damages, and it have such other relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

By:     /s/ *Robert J. Davis*

**ROBERT J. DAVIS**
State Bar No. 05543500
**J. BAILEY McSHANE, IV**
State Bar No. 24104388
**MATTHEWS, SHIELS, KNOTT,**
**EDEN, DAVIS & BEANLAND, L.L.P.**
8131 LBJ Freeway, Suite 700
Dallas, Texas 75251
972/234-3400 (office)
972/234-1750 (telecopier)
bdavis@mssattorneys.com
bmcshane@mssattorneys.com

**ATTORNEYS FOR DEFENDANT**
**DENTON COUNTY, TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2023, I electronically filed the foregoing document with the clerk of the Court for the Eastern District, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means: Seth Fuller, Naval Patel.

/s/ *Robert J. Davis*

**ROBERT J. DAVIS**